**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| SARACANA CONDOMINIUM ASSOCIATION, an Arizona non-profit corporation, | |
| Plaintiff, | |
| v. | |
| STATE FARM FIRE AND CASUALTY COMPANY; and DOES 1–50, inclusive, | |
| Defendants. | Case No. 2:12-cv-02250-SLG |

## <u>ORDER RE PENDING MOTIONS</u>

Before the Court are three motions in limine and a motion for partial summary judgment, all filed by Defendant State Farm Fire and Casualty Company.  All four motions have been fully briefed, and oral argument on the partial summary judgment motion was heard telephonically on April 17, 2014.[1]  Having considered the documents filed with the Court, the applicable law, and the arguments of the parties, the Court will grant the motion for partial summary judgment and two of the three motions in limine. The remaining motion in limine will be denied as moot.

---

[1] *See* Docket 69 (Minute Entry).

## FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts, presented in the light most favorable to Plaintiff Saracana Condominium Association for purposes of State Farm's partial summary judgment motion,[2] are as follows[3]:

### I. Saracana's Insurance Claim to State Farm.

Saracana is a condominium association encompassing 21 buildings in Sun City, Arizona.[4]  Saracana had an insurance policy with State Farm that covered "accidental direct physical loss to buildings . . . caused by an insured loss."[5]  The policy includes "windstorm or hail" as an insured loss.[6]  The parties do not dispute that the policy was in effect at all times relevant to this lawsuit.

In 2008, Saracana had filed a claim with State Farm for damage to some of its buildings.[7]  State Farm accepted and adjusted the claim, but Saracana declined State

---

[2] *See infra* Discussion Part II (explaining summary judgment standard).

[3] Saracana's Controverting Statement of Facts and Separate Statement of Facts in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment contains a number of facts not relied upon by Saracana in its opposition to State Farm's motion.  *Compare, e.g.*, Docket 59 at 14 ¶ 65 (Pl.'s Statement of Facts) ("There is nothing in the claim file or activity log indicating that Defendant ever considered paying general contractors Overhead and Profit when making payment to the Plaintiff."), *with* Docket 58 (Opp'n to Mot. for Partial Summ. J.) (not mentioning general contractors Overhead and Profit).  In this Order, the Court discusses only facts relevant to the legal arguments the parties make in their briefing.  *Cf. Lacy v. Cnty. of Maricopa*, 631 F. Supp. 2d 1183, 1192 n.10 (D. Ariz. 2008) (on motion for summary judgment, courts "review only issues which are argued *specifically and distinctly*" (emphasis in original) (quoting *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003))).

[4] Docket 43 at 2 ¶ 3 (Def.'s Statement of Facts); Docket 59 at 2 ¶ 3 (Pl.'s Statement of Facts).

[5] Docket 43-1 at 40 (Ex. 3 to Def.'s Statement of Facts: Insurance Policy).

[6] Docket 43-1 at 39 (Ex. 3 to Def.'s Statement of Facts: Insurance Policy).

[7] Docket 43-1 at 5 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

Farm's $14,636.46 payment.[8]

On October 5, 2010, a hailstorm occurred in the Phoenix metropolitan area.[9] Due to the large number of claims being filed, State Farm brought in a catastrophe team, i.e., additional adjusters to assist with handling storm-related claims.[10]

On approximately January 20, 2011, Saracana notified State Farm that the shingle roofs on all 21 of the condominium buildings in its association had been damaged.[11]  Two days later, the claim was assigned to adjuster Christina Wagner, who called Saracana that same day and arranged to conduct a two-day inspection of the 21 buildings on February 5 and 7, 2011.[12]

The February inspection took place as scheduled.  At the inspection, Saracana board member David Mathews was present, along with two representatives—Dave Calvert and Ryan Herzog—from Saracana's contractor, Jasper Contractors.[13]   Ms.

---

[8] Docket 43-1 at 5 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log); Docket 59 at 4 ¶ 18 (Pl.'s Statement of Facts).  At deposition, Saracana board member David Mathews testified that Saracana returned the payment check and told State Farm that "it didn't cover the damages." Docket 59-6 at 5–6, 37 (Ex. 6 to Pl.'s Statement of Facts: Mathews Dep.).

[9] Docket 43 at 1 ¶ 1 (Def.'s Statement of Facts); Docket 59 at 1 ¶ 1 (Pl.'s Statement of Facts).

[10] Docket 59-7 at 7–8 (Ex. 7 to Pl.'s Statement of Facts: Smith Dep.).

[11] Docket 43-1 at 5 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).  In its statement of facts, Saracana "dispute[s] that the claim was first received on January 20, 2012."  2012 appears to be a typographical error for 2011.  Saracana explains: "While it is unclear as to the date Plaintiff's contacted Defendant, it appears that Defendant's catastrophe team received the claim on January 20, 2011."  Docket 59 at 3 ¶ 11 (Pl.'s Statement of Facts).

[12] Docket 43-1 at 5 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[13] Docket 43-1 at 6 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log); Docket 59 at 4 ¶ 19 (Pl.'s Statement of Facts).  In its statement of facts, Saracana "dispute[s] that Jasper was the Contractor of Choice only to the extent that Defendant intends to attribute opinions or statements from Jasper onto Plaintiff."  Docket 59 at 4 ¶ 19.

Wagner photographed the roofs and took detailed notes in a claim activity log.[14]  Those notes indicate that she determined that the roofs on twelve of the buildings—1, 2, 5, 10, 11, 12, 13, 17, 18, 19, 20, and 21—required total replacement.[15]  It appears Ms. Wagner determined shortly thereafter that the roof on building 7 also required replacement.[16]  Ms. Wagner's notes indicate that the roofs on the remaining eight buildings—3, 4, 6, 8, 9, 14, 15, and 16—were either not damaged or could be repaired.[17]

Ms. Wagner's notes from the inspection also indicate that "Dave and Ryan" from Jasper Contractors agreed with each of her findings.[18]  However, at deposition when Ms. Wagner was asked why she had indicated in the log that Dave and Ryan agreed, she testified: "I suppose[] I took silence as an agreement."[19]

Following the inspection, Ms. Wagner estimated the cost of repairs at $182,766.90.[20]  On February 22, 2011, State Farm authorized a payment of that

---

[14] Docket 43-1 at 6–10 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log); Docket 59 at 4 ¶ 20 (Pl.'s Statement of Facts).

[15] Docket 43-1 at 6–10 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[16] *See* Docket 43-1 at 11 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[17] *See* Docket 43-1 at 6–10 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[18] Docket 43-1 at 6–10 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).  With respect to building 9, Ms. Wagner's notes indicate Dave initially expressed some disagreement with her findings: "Dave suggested that roof has excessive granular loss from hail, explained that granular loss occurs naturally, when it rains, hails, during installation, etc.  Based on his argument of granular loss any roof that got hailed on would need to be replaced, which is not the case.  Dave [understood] and agreed."  Docket 43-1 at 7–8.

[19] Docket 59-5 at 26 (Ex. 5 to Pl.'s Statement of Facts: Wagner Dep.).

[20] Docket 43-1 at 11 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

amount less the $5,000 deductible.[21]   Saracana's claims in this case stem from State Farm's refusal to pay to replace the roofs on the remaining eight buildings.[22]

On February 23, 2011—after the payment had been authorized by State Farm but before it had been received by Saracana—Jasper Contractors faxed a 51-page estimate to State Farm.[23]   The cover sheet contains a message that states in relevant part: "MESSAGE: Jasper Contractors disagrees with the adjuster's opinion.  The areas of these roofs that the adjuster wants us to repair are simply UN-REPAIRABLE due to shingle brittleness.  Therefore, on behalf of your insured we are requesting a second inspection with a field supervisor."[24]   Below that message, the cover sheet lists eleven addresses.[25]   At oral argument, Saracana stated the Jasper estimate was approximately $100,000 more than the State Farm estimate from the initial inspection.[26]

Three days later, on February 26, 2011, Ms. Wagner met with Mr. Mathews at the property "to discuss the coverages applicable to the loss and the estimate, as well as the payment amount."[27]   Ms. Wagner's notes indicate she told Mr. Mathews that

---

[21] Docket 43-1 at 11–13 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log); *see also* Docket 43-1 at 3 (Ex. 1 to Def.'s Statement of Facts: Loss Summary) (showing additional $557.76 was deducted from payment for depreciation).

[22] *See* Docket 1-1 at 3–4 ¶¶ 17–18, 24 (Compl.).

[23] Docket 59-1 (Ex. 1 to Pl.'s Statement of Facts: 2/23/11 Jasper Estimate).

[24] Docket 59-1 at 2 (Ex. 1 to Pl.'s Statement of Facts: 2/23/11 Jasper Estimate).

[25] Docket 59-1 at 2 (Ex. 1 to Pl.'s Statement of Facts: 2/23/11 Jasper Estimate).  It is unclear to which building numbers these addresses correspond.

[26] This figure appears to refer predominantly to the cost of replacing the roofs on the eight disputed buildings.

[27] Docket 43 at 4 ¶ 27 (Def.'s Statement of Facts) (referencing Docket 43-1 at 15 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log)); Docket 59 at 7 ¶ 27 (Pl.'s Statement of Facts).

State Farm would not pay for damage to "awnings, AC units, etc[.] where damages were identical to those documented in prior [2008] claim."[28]  Her notes also state: "[Mr. Mathews] believes that [Saracana] should still be paid for hail damage to awnings, [I] explained that any payment for those would need to be under prior claim."[29]

In early March 2011, Jasper Contractors completed the roof replacements on the thirteen buildings that Ms. Wagner had identified as requiring roof replacements.[30]

Meanwhile, on March 2, 2011, a Jasper representative called State Farm to inquire about the second inspection.[31]  State Farm's claim activity log indicates that a State Farm representative informed the Jasper representative that before State Farm would consider a second inspection, it would need "new information."[32]  According to State Farm, at that time it believed that "Ms. Wagner had already resolved the issues raised by the February 23, 2011, fax during her meeting with Mr. Mathews on February 26, 2011."[33]  The Jasper representative "stated she would discuss [what new information was available with the project managers]."[34]

---

[28] Docket 43-1 at 15 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[29] Docket 43-1 at 15 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[30] *See* Docket 43-1 at 17 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[31] Docket 43-1 at 16 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[32] Docket 43-1 at 16 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[33] Docket 43 at 5 ¶ 30 (Def.'s Statement of Facts).

[34] Docket 43-1 at 16 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).  The Jasper representative also stated that "[Jasper's] people would not have agreed to the findings" from the first inspection.  Docket 43-1 at 16.

On March 9, 2011, the Jasper representative again called State Farm and requested a second inspection.[35]  The representative stated that Jasper had sent State Farm the requested new information on February 23.  A State Farm representative "[a]dvised [the Jasper representative that State Farm] inspected on February 26th with this information."[36]  It appears this State Farm representative erroneously believed that the first inspection had occurred on February 26—the date Ms. Wagner met with Mr. Mathews to provide him with State Farm's estimate—rather than on February 5 and 7.

On March 10, 2011, Mr. Mathews called State Farm to inquire about the status of the second inspection.[37]  The State Farm representative who took the call contacted Jasper Contractors that same day and concluded that a second inspection had been requested for six buildings.  The representative told Jasper and Mr. Mathews that a team manager would review the request.[38]  Mr. Mathews contacted State Farm again on March 11, 14, and 15, 2011.[39]  On March 15, a State Farm team manager agreed to the second inspection.[40]

On March 22, 2011, Ms. Wagner, two State Farm trainers, and a State Farm team manager met with Mr. Mathews and Jasper Contractors representatives Ryan

---

[35] Docket 43-1 at 17 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[36] Docket 43-1 at 17 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[37] Docket 43-1 at 20 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[38] Docket 43-1 at 20 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[39] Docket 43-1 at 22 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[40] Docket 43-1 at 22 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).  State Farm asserts it arranged for this second inspection "[a]fter determining that the issues raised in Jasper Contractors' [February 23, 2011] fax had not been resolved at the February 26, 2011[] meeting." Docket 43 at 5 ¶ 31 (Def.'s Statement of Facts).

Herzog and Archie Story for the second inspection of the six disputed buildings.[41]   Ms. Wagner's log notes state in part:

> No additional wind or hail damage found to any roof, this was agreed upon by [the State Farm personnel] and Archie Story from Jasper Roofing.  On building 011 [State Farm] initially put screens that were damaged under the wrong unit . . . .  Mr. Mathews also insisted that front fabric awning was wind damaged.  There is a piece of this that was torn, benefit of the doubt will assume is storm related.[42]

Ms. Wagner's log notes also indicate that Ryan Herzog from Jasper declined to offer any opinions during that second inspection except with respect to one building.[43]  With respect to that one building, Ms. Wagner's log notes state in part:

> Ryan stated that he felt there must be hail damage to this roof because other roofs in the area have been purchased based on hail damage.  Explained to Ryan what hail damage is . . . .  Offered Ryan chaulk [sic] to point out hail impacts, he did not circle or point out anything on this roof.[44]

On or about March 26, 2011, State Farm issued an additional payment in the amount of $797.84 for the screens and the awning and closed its file on Saracana's claim.[45]  Ms. Wagner's closing letter to Saracana included her telephone number and informed Saracana that it could call if it had questions or needed assistance.[46]

---

[41] Docket 43-1 at 24 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).  Two buildings with flat roofs were not inspected.  Docket 43-1 at 25.

[42] Docket 43-1 at 24 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[43] *See* Docket 43-1 at 24–25 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[44] Docket 43-1 at 24 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[45] Docket 43 at 5 ¶ 35 (Def.'s Statement of Facts); Docket 43-1 at 27 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log); Docket 43-2 at 13 (Ex. 6 to Def.'s Statement of Facts: 3/26/11 Letter from Christina Wagner to Saracana).

[46] Docket 43-2 at 13 (Ex. 6 to Def.'s Statement of Facts: 3/26/11 Letter from Christina Wagner to Saracana).

Saracana disputes that at the second inspection, no new roof damage was found or pointed out by any of the individuals present.[47]

State Farm's log notes dated April 14, 2011 indicate that on that day, a State Farm agent contacted the main office and stated he had met with "several policyholders," who "expressed frustration with inspection results."[48]   The log notes indicate that "claim process, reasoning/conditions of 2nd inspection" were explained to the agent, and the agent "stated he understood."   The log notes indicate the agent then contacted the local office.   The agent stated he would be meeting with a Saracana representative the next day, and he asked whether Saracana "has any other recourse." The log entries for that date conclude:  "As of now, [State Farm's] findings will stand and [Saracana's] final recourse is to file suit."[49]

The log notes also indicate that State Farm sent Saracana a partial denial letter on April 21, 2011, and that Saracana filed a DOI complaint in May 2011.[50]   It does not appear the parties communicated again about the claim until November 2011.[51]

---

[47] *See* Docket 59 at 7–8 ¶ 34 (Pl.'s Statement of Facts) ("Mr. Matthews pointed out that granular loss which is considered hail damage.  Mr. Matthews pointed to damaged shingles which was discounted by the four representatives of [State Farm].  Mr. Herzog did not agree with the findings of the [State Farm] adjusters and stated so, at which point the four representatives of Defendant handed him a piece of chalk and told him to circle the evidence of hail damage. [State Farm's] representatives noted Mr. Herzog's refusal to do so as an admission of lack of damage.  Ms. Wagner testified that she took Mr. Herzog's silence at the [initial] inspection and second inspection as agreement with her findings." (citation omitted)).  There are no record cites given to support the assertions regarding Mr. Matthews.

[48] Docket 43-1 at 29 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[49] Docket 43-1 at 29 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).

[50] Docket 43-1 at 30 (Ex. 2 to Def.'s Statement of Facts: Claim Activity Log).  The partial denial letter and the results of the DOI complaint do not appear in the record.

At some point in 2011, Saracana retained counsel.[52]  And in September 2011, State Farm sent a letter to Saracana notifying it that its insurance policy would not be renewed due to its "overall claim activity."[53]

In early 2012, State Farm retained Core Consulting Group to inspect the property.[54]  Core Consulting issued a report dated March 22, 2012, which concludes that "the hail storm of 2010 did not adversely affect the normal life expectancy of the roofs" that State Farm would not pay to replace.[55]  However, after Saracana filed suit in September 2012, its counsel retained RB Engineering, which issued a report dated June 19, 2013 that recommends the eight disputed roofs should be replaced because of storm-related damage.[56]

## II.  Evidence Concerning State Farm's Training Practices.

With its opposition to State Farm's partial summary judgment motion, Saracana submitted evidence concerning how State Farm trained the catastrophe team adjusters

---

[51] *See* Docket 43-1 at 30 (Ex. 2 to Def.'s Statement of Fact: Claim Activity Log).  In November 2011, Saracana's President contacted State Farm and explained that water damage to a ceiling appeared after a heavy storm.  A State Farm representative advised that "if damage came from different storm a new claim would need to be filed."  Docket 43-1 at 30.

[52] Docket 59 at 8 ¶ 36 (Pl.'s Statement of Facts).

[53] Docket 62-1 at 4 (Ex. A to Def.'s Resp. to Pl.'s Statement of Facts: 9/12/11 Letter from State Farm to Saracana).

[54] Docket 59 at 8 ¶ 36 (Pl.'s Statement of Facts).

[55] Docket 43-2 at 15, 64 (Ex. 7 to Def.'s Statement of Facts: Core Consulting Group Report).

[56] *See* Docket 59-3 at 10 (Ex. 3 to Pl.'s Statement of Facts: RB Engineering Report).  However, the RB Engineering report indicates that replacing the roofs on two of the disputed eight buildings is optional.  *See* Docket 59-3 at 10.  Saracana also provided State Farm with "a report from an independent adjuster that demonstrated damage to the remaining eight buildings including photographs of the damage."  Docket 59 at 2 ¶ 2 (Pl.'s Statement of Facts) (referencing Docket 59-2 (Ex. 2: Austin Insurance Services Report)).

who worked on claims arising out of the October 5, 2010 hailstorm.  This evidence includes a State Farm Operation Guide for wind and hail damage to roofs dated July 7, 2010;[57] Ms. Wagner's deposition;[58] and the deposition of Deborah Smith, a State Farm manager who supervises claims adjusters in Arizona.[59]

"Th[e] Operation Guide provides direction [to claims handlers] for handling roof claims that involve damage from wind or hail."[60]  The "Adjustment Guidelines" section contains a subsection titled "Composition Roofs (asphalt, fiberglass)."[61]  This subsection states in relevant part:

> Damage occurs to roof coverings when water shedding ability or the life expectancy of the material is reduced. . . .
>
> . . . .
>
> Granular Loss: Granular loss occurs naturally and is inherent to composition roofing products as a result of weathering.  The general rule is we will not pay for granular loss, since it does not affect the watertight integrity of the roof.
>
> Granules serve two main functions on asphalt roofing, block ultraviolet light from the asphalt and provide color to the roof. . . .
>
> Hail can cause actual damage to composition roofing in conjunction with heavy granular loss.  Where there is excessive granular loss accompanying actual roof damage caused by hail, and it affects the integrity and utility of the roof, consider payment for granular loss. . . .
>
> . . . .

---

[57] Docket 59-8 (Ex. 8 to Pl.'s Statement of Facts: Operation Guide).

[58] Docket 59-5 at 9 (Ex. 5 to Pl.'s Statement of Facts: Wagner Dep.).

[59] Docket 59-7 at 3–4 (Ex. 7 to Pl.'s Statement of Facts: Smith Dep.).  This deposition was taken in a different case.  *See* Docket 59-7 at 2.

[60] Docket 59-8 at 2 (Ex. 8 to Pl.'s Statement of Facts: Operation Guide).

[61] Docket 59-8 at 4–6 (Ex. 8 to Pl.'s Statement of Facts: Operation Guide).

Wind: Wind damage to asphalt shingles occurs when a portion of the shingle is blown off the roof, or the shingle is bent backwards and a fracture forms through the matting material.  If the wind caused the seals to break, it may require hand sealing.

Unsealed Shingles: . . . It is important to note any unsealed shingles that may be observed during the inspection.   The claim handler should consider whether the breakage of the bond was caused by accidental direct physical loss, which may include, looking for evidence of tearing on the shingle below or by observing residue underneath the shingle from the sealant.[62]

At deposition, Ms. Wagner testified she had read this Operation Guide prior to working on claims arising out of the October 5, 2010 hailstorm.[63]  Ms. Wagner was asked to read the above-quoted paragraph on wind, and she was then asked: "Would you agree that the operation guide suggest[s] that a broken seal could be damage under the policy?"[64]  She responded: "I don't know."[65]  Ms. Wagner was also asked what role granules serve on a shingle and what they do for the roof.  She responded: "I don't know.  I don't know how to answer that."[66]  Additionally, Ms. Wagner testified that

---

[62] Docket 59-8 at 6–7 (Ex. 8 to Pl.'s Statement of Facts: Operation Guide).  In a deposition in a different case, Scott Steele, State Farm's catastrophe team manager for claims arising out of the October 5, 2010 hailstorm, testified that unsealed shingles may be considered wind damage.  *See* Docket 59-4 at 18 (Ex. 4 to Pl.'s Statement of Facts: Steele Dep.) ("I would agree that State Farm adjusters should not be instructed that unsealed shingles are not wind damage.").

[63] Docket 59-5 at 9 (Ex. 5 to Pl.'s Statement of Facts: Wagner Dep.).

[64] Docket 59-5 at 22 (Ex. 5 to Pl.'s Statement of Facts: Wagner Dep.).

[65] Docket 59-5 at 22 (Ex. 5 to Pl.'s Statement of Facts: Wagner Dep.).  State Farm objected to the form of this question.  Docket 59-5 at 22.

[66] Docket 59-5 at 10 (Ex. 5 to Pl.'s Statement of Facts: Wagner Dep.).

she only sometimes tries to lift some shingles when inspecting a roof to determine whether they are unsealed.[67]

Deborah Smith testified at deposition that after a catastrophe, State Farm typically conducts an orientation for members of the catastrophe team.[68]   State Farm also prepares a document called Estimatics Claim Handling Practices ("ECHP") to inform the adjusters of any specific claim handling procedures for the particular state where the catastrophe occurred.[69]   At the deposition, Ms. Smith was shown a page out of the ECHP about sealing of shingles, which had a handwritten notation stating: "Not wind damage.   No allowance for this."[70]   When asked about this notation, Ms. Smith testified: "I don't know who wrote this, and I don't know what the context of what they were trying to say on this meant."[71]   There is no evidence in the record before the Court indicating whether Ms. Wagner was trained based on this handwritten notation.

---

[67] Docket 59-5 at 22 (Ex. 5 to Pl.'s Statement of Facts: Wagner Dep.).

[68] Docket 59-7 at 8 (Ex. 7 to Pl.'s Statement of Facts: Smith Dep.).  Ms. Smith testified she was on vacation at the time of the orientation following the October 2010 hailstorm.  Docket 59-7 at 8.

[69] *See* Docket 59-7 at 8 (Ex. 7 to Pl.'s Statement of Facts: Smith Dep.).

[70] Docket 59-7 at 16 (Ex. 7 to Pl.'s Statement of Facts: Smith Dep.).

[71] Docket 59-7 at 17 (Ex. 7 to Pl.'s Statement of Facts: Smith Dep.); *see also* Docket 59-4 at 19 (Ex. 4 to Pl.'s Statement of Facts: Steele Dep.) ("I'm not saying that this statement is or is not incorrect.  This statement is simply a fragment at best. . . . I'm not sure who wrote the note."). Saracana asserts Ms. Smith testified "that in her 27 years of experience she has NEVER considered unsealed shingles to be damage despite the language in Defendant's own Operation Guide."  Docket 59 at 12 ¶ 53 (Pl.'s Statement of Facts).  However, Ms. Smith actually testified: "In my 27 years of experience, I've not noticed unsealed shingles as being a damage. . . . To my knowledge, I have not ever had an unsealed shingle case come in front of me where I didn't see [other evidence of] direct physical . . . damage to the shingle . . . ." Docket 59-7 at 10 (Ex. 7 to Pl.'s Statement of Facts: Smith Dep.).

III.    **Procedural History and Pending Motions.**

Saracana initiated this action in Arizona state court in September 2012.[72]   The Complaint contains two counts: (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing, or bad faith.[73]   The following month, State Farm removed the action to federal court on the basis of diversity of citizenship.[74]   Discovery concluded on October 29, 2013.[75]   On November 26, 2013, State Farm filed its motion for partial summary judgment.[76]   In the motion, State Farm requests summary judgment on Saracana's bad faith claim, as well as its request for punitive damages.[77]   According to State Farm, the only issue for trial is "whether certain roofs at [Saracana's] property suffered direct physical loss as a result of the October 5, 2010, hailstorm."[78]   The motion has been fully briefed,[79] and oral argument has been heard.[80]

---

[72] Docket 1-1 (Compl.).

[73] Docket 1-1 at 5–6 (Compl.).

[74] Docket 1 (Notice of Removal).

[75] *See* Docket 37 (Order re Deadlines for Disc. & Mots.).

[76] Docket 42 (Mot. for Partial Summ. J.).

[77] Docket 42 at 1 (Mot. for Partial Summ. J.).

[78] Docket 42 at 2 (Mot. for Partial Summ. J.).

[79] Docket 58 (Opp'n to Mot. for Partial Summ. J.); Docket 61 (Reply re Mot. for Partial Summ. J.).

[80] Docket 69 (Minute Entry).  Additionally, State Farm filed a Supplemental Submission of Authority, to which Saracana responded.  *See* Docket 66 (Def.'s Supplemental Submission of Authority); Docket 67 (Pl.'s Resp.).  And Saracana filed a Supplemental Submission of Authority, to which State Farm responded.  *See* Docket 70 (Pl.'s Supplemental Submission of Authority); Docket 71 (Def.'s Resp.).

On December 23, 2013, State Farm filed three motions in limine, all of which have been fully briefed: Motion in Limine Re Unknown Contractors and "Roof Problems";[81] Motion in Limine Re Claimed Damage to Other Properties in the Area;[82] and Motion in Limine Regarding Testimony of Charles Miller.[83]   State Farm requested oral argument on the motions in limine; however, at the argument on April 17, 2014, neither party made any arguments concerning the motions in limine.  Additionally, at the oral argument, the Court asked State Farm whether, if the Court were to grant State Farm's motion for partial summary judgment, that would affect the motions in limine. State Farm responded that the Motion in Limine Regarding Testimony of Charles Miller would become moot, but not the other two motions.

## DISCUSSION

### I.   Jurisdiction.

The Court has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332.

### II.   State Farm's Motion for Partial Summary Judgment.

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "The moving party initially bears the burden of proving the absence of a genuine issue of material fact."[84]   In cases where

---

[81] Docket 48 (Mot. in Limine re Unknown Contractors & "Roof Problems"); *see also* Docket 53 (Opp'n); Docket 55 (Reply).

[82] Docket 49 (Mot. in Limine re Claimed Damage to Other Properties in the Area); *see also* Docket 51 (Opp'n); Docket 56 (Reply).

[83] Docket 50 (Mot. in Limine re Miller Test.); *see also* Docket 52 (Opp'n); Docket 57 (Reply).

[84] *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

the non-moving party bears the burden of proof at trial, the moving party "need only prove that there is an absence of evidence to support the non-moving party's case."[85]  If the moving party meets this burden, then the non-moving party must present specific evidence demonstrating the existence of a genuine issue for trial, i.e., "evidence from which a jury could reasonably render a verdict in the non-moving party's favor."[86]  The non-moving party may not rely on mere allegations or denials.[87]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party and draw "all justifiable inferences" in the non-moving party's favor.[88]  If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[89]

### A. The Court will grant summary judgment to State Farm on Saracana's bad faith claim (Count 2 of the Complaint).

State Farm requests summary judgment on Saracana's bad faith claim.[90]  The Arizona Supreme Court has held that "one of the benefits that flow from the insurance contract is the insured's expectation that his insurance company will not wrongfully deprive him of the very security for which he bargained or expose him to the

---

[85] *Id.* (citing *Celotex*, 477 U.S. at 323).

[86] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

[87] *Anderson*, 477 U.S. at 248.  The non-moving party may rely on any of the evidentiary materials listed in Rule 56(c).  *Celotex*, 477 U.S. at 324.  This includes depositions, documents, affidavits, stipulations, and discovery materials.  *See* Fed. R. Civ. P. 56(c)(1).

[88] *Anderson*, 477 U.S. at 255.

[89] *Id.* at 249–50.

[90] Docket 42 at 6 (Mot. for Partial Summ. J.).

catastrophe from which he sought protection."[91]   Thus, under Arizona law "there is a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim."[92]   The insurance company must "immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim."[93]

"The tort of bad faith arises when [an] insurer 'intentionally denies, fails to process or pay a claim without a reasonable basis.'"[94]   To prove bad faith, a plaintiff must show: (1) the insurer unreasonably investigated, evaluated, or processed its claim (an objective test); and (2) the insurer either knew it was acting unreasonably or "act[ed] with such reckless disregard that such knowledge may be imputed to it (a subjective test)."[95]   An insurer may challenge a claim it believes is "fairly debatable" without acting in bad faith, but only if the insurer acts reasonably in investigating, evaluating, and processing the claim.[96]   Ordinarily, an insurer's "belief in fair debatability 'is a question of fact to be determined by the jury.'"[97]   However, "if plaintiff offers no significant

---

[91] *Rawlings v. Apodaca*, 726 P.2d 565, 571 (Ariz. 1986).

[92] *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981); *see also Rawlings*, 726 P.2d at 570 ("[T]he insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured.").

[93] *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000).

[94] *Id.* (quoting *Noble*, 624 P.2d at 868).

[95] *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 277 P.3d 789, 794–95 (Ariz. Ct. App. 2012) (internal quotation marks omitted).

[96] *See Zilisch*, 995 P.2d at 279–80; *Rawlings*, 726 P.2d at 572.

[97] *Zilisch*, 995 P.2d at 279 (quoting *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1137 (Ariz. 1982)).

evidence that calls into question defendant's belief that the claim is debatable, [a] court may enter judgment as a matter of law."[98]

Here, State Farm asserts it is entitled to summary judgment on Saracana's bad faith claim because "[t]he facts of this case establish that State Farm acted reasonably as a matter of law."[99]  In opposition, Saracana asserts there is evidence that State Farm improperly trained its adjusters and otherwise failed to conduct an adequate investigation.[100]

i.   *Adjuster training.*

Saracana asserts State Farm's "adjuster Ms. Wagner lacked a rudimentary understanding of the essential elements of a roof system" and "is not qualified to assess hail or wind damage."[101]  Saracana asserts that at deposition, Ms. Wagner did not know what purpose granules serve or whether unsealed shingles were covered under the policy.[102]  Saracana maintains Ms. Wagner did not know whether unsealed shingles were covered because State Farm "instructed its insurance adjusters verbally that unsealed shingles are not wind damage as evidenced by the hail training [it] provided to adjusters during orientation immediately following the October 5, 2010 storm."[103]

---

[98] *Montoya Lopez v. Allstate Ins. Co.*, 282 F. Supp. 2d 1095, 1100 (D. Ariz. 2003).

[99] Docket 42 at 7 (Mot. for Partial Summ. J.).

[100] Docket 58 at 1–2 (Opp'n to Mot. for Partial Summ. J.).  Related to the alleged inadequate investigation, Saracana asserts State Farm failed to timely pay Saracana's claim and failed to reconcile the difference between its scope of loss and Saracana's scope of loss.  Docket 58 at 2.

[101] Docket 58 at 5, 8 (Opp'n to Mot. for Partial Summ. J.).

[102] Docket 58 at 5–6 (Opp'n to Mot. for Partial Summ. J.).

[103] Docket 58 at 5 (Opp'n to Mot. for Partial Summ. J.).

Saracana refers to the apparent handwritten notation on the copy of the ECHP that was discussed at Deborah Smith's deposition in a different case.[104]

However, even if the handwritten notation on the copy of the ECHP shown to Ms. Smith at deposition could be considered evidence that State Farm verbally instructed adjusters that unsealed shingles are not wind damage, Saracana has presented no evidence that Ms. Wagner ever received this training.[105] And even if Ms. Wagner was inadequately trained in how to investigate unsealed shingles,[106] any shortcomings in her initial inspection would have been promptly remedied at the March 2011 second inspection. For that second inspection was attended by two State Farm trainers and a team manager who all agreed with Ms. Wagner's findings from the initial inspection. And also present at that second inspection were the two Jasper Contractors representatives who failed to clearly identify additional roof damage not accounted for in Ms. Wagner's initial estimate. Accordingly, Saracana's evidence concerning Ms. Wagner's alleged inadequate training does not support its bad faith claim.

---

[104] *See supra* text accompanying notes 69–71; *see also* Docket 59 at 12 ¶ 51 (Pl.'s Statement of Facts).

[105] A plaintiff cannot prove bad faith with evidence of an insurer's allegedly inappropriate claims handling practices unless the plaintiff connects those practices to the insurer's handling of plaintiff's claim. *See, e.g., Taft v. Am. Family Mut. Ins. Co.*, No. CV-11-2599, 2013 WL 5498226, at *6 (D. Ariz. Oct. 1, 2013) ("'[I]nstitutional' bad faith is not a commonly recognized and accepted legal claim."); *Milhone v. Allstate Ins. Co.*, 289 F. Supp. 2d 1089, 1102 (D. Ariz. 2003) ("[B]ecause all of the above general allegations of bad faith, assuming they are true, did not affect the processing of Plaintiff's claim *in this case* the Court finds that a cause of action for bad faith cannot lie based on these allegations. In other words, if Plaintiff was not personally damaged by the allegedly inappropriate practices, Plaintiff cannot base his claim on such practices.").

[106] *See supra* text accompanying note 67; *see also* Docket 59-9 at 19 (Ex. 9 to Pl.'s Statement of Facts: Miller Rep.) ("[T]here is no evidence that State Farm investigated whether the shingles were damaged by wind uplift. . . . Wind uplift damage to roof shingles is a well recognized result of windstorms." (referencing Wagner Dep.)).

*ii. State Farm's investigation.*

Saracana asserts State Farm's investigation of its claim was inadequate in other respects.  First, Saracana asserts State Farm did not conduct its first inspection until "at least 16 days after the claim was filed" and "forced [Saracana] to wait 6 weeks [following the first inspection] before [it] would conduct the reinspection . . . in part due to [State Farm's] failure to properly document the activity log."[107]  However, sixteen days is not an objectively unreasonable delay, particularly since Ms. Wagner called Saracana to set up the initial inspection the same day she received the claim and two days after the catastrophe team received it.[108]  Following the initial inspection, State Farm had no reason to know a second inspection might be warranted until Jasper Contractors faxed its estimate.  Although approximately four weeks passed between that fax and the second inspection, this is not an objectively unreasonable delay.  And the documentation in the activity log suggesting the Jasper estimate was not "new information" appears to be an inadvertent error that arose from the timing of State Farm's receipt of the estimate at approximately the same time as the initial payment authorization and shortly before Ms. Wagner met with the insureds on February 26, which does not give rise to a bad faith claim.[109]

---

[107] Docket 58 at 8 (Opp'n to Mot. for Partial Summ. J.).

[108] *See supra* text accompanying notes 11–12.

[109] *See Rawlings v. Apodaca*, 726 P.2d 565, 573 (Ariz. 1986) ("Papers get lost, telephone messages misplaced and claims ignored because paperwork was misfiled or improperly processed.  Such isolated mischances may result in a claim being unpaid or delayed.  None of these mistakes will ordinarily constitute a breach of the implied covenant of good faith and fair dealing . . . .").

Saracana also asserts State Farm's investigation was inadequate because State Farm "failed to reconcile the obvious, gaping disparity between the scopes of loss prepared by its adjusters and Saracana's licensed roofers."[110]   However, State Farm conducted a second inspection with Saracana's roofers in an attempt to reconcile the scope of loss in its initial estimate with the scope of loss in Jasper's estimate.   State Farm's decision to pay based on its own estimate, without more, does not demonstrate bad faith.[111]

Finally, Saracana asserts State Farm "failed to consult a qualified roofing expert (**or any roofer**) during the adjustment of the Saracana claim and ignored the findings of a qualified roofer—Jasper roofing; instead relying upon the purported 'findings' by Ms. Wagner.  **This is quintessential bad faith**."[112]   In support of this assertion, Saracana cites to paragraph 78 of its statement of facts,[113]   which in turn cites to the report of Saracana's claims handling expert, Charles Miller.[114]

Mr. Miller's report states that "[g]ood faith claim practices require that [the insurer's] investigation be objective, thorough, and timely," and that "State Farm failed to comply with this insurance industry standard by failing to retain a roofing expert during

---

[110] Docket 58 at 8 (Opp'n to Mot. for Partial Summ. J.).

[111] *See supra* note 96 and accompanying text (insurer may challenge claim that is "fairly debatable" so long as insurer acts reasonably in investigating, evaluating, and processing claim).

[112] Docket 58 at 7 (Opp'n to Mot. for Partial Summ. J.) (emphasis in original).

[113] Docket 58 at 6 (Opp'n to Mot. for Summ J.) (citing Docket 59 at 16 ¶ 78 (Pl.'s Statement of Facts)).

[114] Docket 59 at 16 ¶ 78 (Pl.'s Statement of Facts) (citing Docket 59-9 at 13 ¶ 18 (Miller Rep.)).

its first two inspections" in early 2011.[115]  His report adds: "Frequently, experts, such as engineers or roofers, are retained by insurers to assist the insurer in its investigation of a first party property loss."[116]

Viewing the evidence in the light most favorable to Saracana, the Court finds that Mr. Miller's report concerning State Farm's failure to retain a roofing expert at the time of the first two inspections does not create a genuine issue for trial with respect to Saracana's bad faith claim.  Mr. Miller's report states that insurers "frequently" hire experts, but it does not explain why State Farm's failure to hire a roofing expert in 2011 was objectively unreasonable.   State Farm sent an adjuster to the first inspection. When Saracana presented State Farm with an estimate from its roofers, Jasper Contractors, that differed from the adjuster's estimate and requested a second inspection, State Farm sent the adjuster, two trainers, and a team manager to conduct that inspection with Saracana's roofers also present.   At that second inspection, Saracana's roofers did not clearly identify additional roof damage that was not included in State Farm's initial estimate.   Under these circumstances, no reasonable jury could consider the material facts argued by Saracana and conclude that State Farm's investigation was conducted in bad faith.  Accordingly, the Court finds that State Farm is entitled to summary judgment on Saracana's bad faith claim.[117]

---

[115] Docket 59-9 at 12–13 ¶¶ 17–18 (Ex. 9 to Pl.'s Statement of Facts: Miller Rep.).  State Farm retained a roofing expert in early 2012, after Saracana had hired counsel.  *See supra* text accompanying notes 52, 54.

[116] Docket 59-9 at 13 ¶ 18 (Ex. 9 to Pl.'s Statement of Facts: Miller Rep.).

[117] The facts in this case are similar in many respects to *El Capitan HOA v. State Farm Fire & Casualty Co.*, the decision cited by State Farm in its Supplemental Submission of Authority. *See El Capitan*, No. CV-12-631, 2014 WL 1152967 (D. Ariz. Mar. 14, 2014) (granting summary

**B. The Court will grant summary judgment to State Farm on Saracana's request for punitive damages.**

State Farm also moves summary judgment on Saracana's request for punitive damages.[118]   Under Arizona law, punitive damages are not recoverable for breach of contract unless there is an underlying tort, such as bad faith.[119]   Because the Court will grant summary judgment to State Farm on Saracana's bad faith claim, it will also grant summary judgment to State Farm on Saracana's request for punitive damages.[120]

## III.   State Farm's Motions in Limine.

**A. Motion in Limine Re Unknown Contractors and "Roof Problems."**

In this motion, State Farm seeks to preclude testimony by David Mathews or other witnesses concerning the opinions of certain "unknown" contractors and condominium owners regarding roof damage.[121]   For example, at deposition Mr.

---

judgment to State Farm on plaintiff's bad faith claim).  And the facts here are quite distinguishable from *Tropitoga Circle Condominium Homeowners Association v. State Farm Fire & Casualty Co.*, the decision cited by Saracana in its Supplemental Submission of Authority.  *See* Order, *Tropitoga v. Circle Condo. Homeowners Ass'n v. State Farm Fire & Cas. Co.*, No. CV-12-02178 (D. Ariz. June 5, 2014) (denying summary judgment to State Farm on plaintiff's bad faith claim).  In *Tropitoga*, the court found that State Farm's first two inspections were "grossly insufficient" in light of the fact that State Farm found "no hail damage" on seventeen roofs at those inspections but subsequently found the seventeen roofs *had* suffered hail damage.  Docket 70-1 at 3–4.  Here, by contrast, State Farm's finding at the first two inspections that eight roofs did not require replacement was consistent with the later finding of its expert, Core Consulting Group.

[118] Docket 42 at 9–10 (Mot. for Partial Summ. J.).

[119] *See Lerner v. Brettschneider*, 598 P.2d 515, 519 (Ariz. Ct. App. 1979).

[120] *Cf. El Capitan*, 2014 WL 1152967, at *8 ("Under Arizona law, punitive damages cannot be awarded for breach of contract; rather, punitive damages are only available when an action sounds in tort. . . . In this case, because the bad faith tort claim will be dismissed, the underlying breach of contract claim will not support an award of punitive damages.  Therefore, the Court will grant State Farm's motion for summary judgment on [plaintiff's] claim for punitive damages.").

[121] Docket 48 (Mot. in Limine re Unknown Contractors & "Roof Problems").

Mathews testified that prior to the first inspection, Saracana "had had about 10 contractors there . . . . Every one of them said that total roofs needed to be replaced."[122]   He also testified that "people in our association were all having roof problems."[123]   State Farm asserts, among other things, that such testimony should be excluded as hearsay.[124]

In its opposition, Saracana asserts Mr. Mathews's testimony is admissible because he "is testifying about a present sense impression."[125]   But Saracana misconstrues the present sense exception to the rule against hearsay.  That exception does not apply to a witness's present sense impression of a hearsay declarant's out of court statement, but rather when the hearsay declarant's statement describes a condition at the time or immediately after the declarant perceived it.[126]

Saracana also asserts it is not using Mr. Mathews's testimony to prove the truth of the matter asserted, but rather to show Mr. Mathews's state of mind regarding the handling of the insurance claim.[127]   However, Mr. Mathews can testify as to why he filed the claim and how he perceived it was being handled without introducing the hearsay statements of other individuals.[128]   Accordingly, the Court will grant State Farm's Motion

---

[122] Docket 48-1 at 3 (Ex. 1 to Mot. in Limine re Unknown Contractors: Mathews Dep.).  Mr. Mathews later testified: "Scratch the 10, just say several."  Docket 48-1 at 5.

[123] Docket 48-1 at 7 (Ex. 1 to Mot. in Limine re Unknown Contractors: Mathews Dep.).

[124] Docket 48 at 3–4 (Mot. in Limine re Unknown Contractors) (citing Fed. R. Evid. 801 *et seq.*)

[125] Docket 53 at 1 (Opp'n to Mot. in Limine re Unknown Contractors).

[126] *See* Fed. R. Evid. 803(1).

[127] Docket 53 at 4–5 (Opp'n to Mot. in Limine re Unknown Contractors).

[128] *See* Docket 55 at 2 (Reply re Mot. in Limine re Unknown Contractors).

in Limine re Unknown Contractors and "Roof Problems."  At trial, Mr. Mathews and other Saracana witnesses will not be permitted to testify as to the opinions of certain contractors or association members concerning the extent of the roof damage to the buildings.  However, if in light of the proceedings at trial Saracana becomes of the view that this ruling should be revisited, it may make an application to do so outside the presence of the jury.

### B.  Motion in Limine Re Claimed Damage to Other Properties in the Area.

In this motion, State Farm seeks to preclude the admission of evidence concerning damage to and claim determinations for other properties in the vicinity of Saracana.[129]  In its first supplemental disclosure, Saracana listed four witnesses from homeowners' associations "adjacent to the properties subject to this litigation" that had roofs replaced by their insurers following the October 5, 2010 hailstorm.[130]  Saracana asserts the testimony of these witnesses is relevant and admissible because it shows "the severity of the storm and how it affected similarly situated and constructed buildings."[131]  Saracana further asserts the testimony is relevant because it shows "[h]ow other insurance companies conducted themselves in handling similarly situated properties."[132]  However, even assuming the testimony of these witnesses could be relevant to Saracana's remaining claim in this case, the Court finds that its probative value is substantially outweighed by the dangers of unfair prejudice, confusing the

---

[129] Docket 49 (Mot. in Limine re Claimed Damage to Other Properties in the Area).

[130] Docket 49-1 at 13 (Ex. 2 to Mot. in Limine re Claimed Damage to Other Properties in the Area: Pl.'s First Supplemental Disclosures).

[131] Docket 51 at 2 (Opp'n to Mot. in Limine re Claimed Damage to Other Properties in the Area).

[132] Docket 51 at 4 (Opp'n to Mot. in Limine re Claimed Damage to Other Properties in the Area).

issues, misleading the jury, and wasting time, particularly if the parties were to dispute the scope and nature of the damages to neighboring properties that are not at issue in this case.[133]  Accordingly, the Court will grant State Farm's Motion in Limine re Claimed Damage to Other Properties in the Area.  At trial, witnesses from neighboring homeowners' associations will not be permitted to testify concerning the damage to their buildings and their insurers' handling of their claims.  However, if in light of the proceedings at trial Saracana becomes of the view that this ruling should be revisited, it may make an application to do so outside the presence of the jury.

### C. Motion in Limine Regarding Testimony of Charles Miller.

In this motion, State Farm seeks to preclude certain categories of testimony by Saracana's claims handling expert, Charles Miller, in support of Saracana's bad faith claim.[134]  However, at oral argument State Farm stated that this motion would become moot if the Court granted State Farm's Motion for Partial Summary Judgment. Accordingly, the Court will deny this motion as moot.

### CONCLUSION

For the foregoing reasons, the Court hereby ORDERS as follows:

1. State Farm's Motion for Partial Summary Judgment at Docket 42 is GRANTED with respect to Saracana's bad faith claim (Count 2 of the Complaint) and Saracana's request for punitive damages.

---

[133] *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

[134] Docket 50 at 4–8 (Mot. in Limine re Testimony of Charles Miller).

2.  State Farm's Motion in Limine re Unknown Contractors and "Roof Problems" at Docket 48 is GRANTED.

3.  State Farm's Motion in Limine re Claimed Damage to Other Properties in the Area at Docket 49 is GRANTED.

4.  State Farm's Motion in Limine Regarding Testimony of Charles Miller at Docket 50 is DENIED as moot.

5.  A telephonic hearing to schedule trial and related pretrial deadlines shall be held on **Tuesday, September 16, 2014 at 1:30 p.m. Alaska time** before Judge Gleason.  To participate telephonically at that hearing, please call (907) 677-6247 five minutes prior to the scheduled time.

DATED this 18th day of August, 2014.

_/s/ Sharon L. Gleason_
UNITED STATES DISTRICT JUDGE